IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| D-D THE AQUARIUM SOLUTION LIMITED, ) ) ) Plaintiff, ) ) ) v. ) ) GIESEMANN LICHTTECHNIK UND ) AQUARISTIK GMBH, et al., ) ) Defendants. ) | 1:14cv846 (LMB/IDD) |

## MEMORANDUM OPINION

Before the Court are the parties' motions for partial reconsideration [Dkt. Nos. 115 and 120]. For the reasons that follow, plaintiff's motion will be denied and defendants' motion will be granted in part.

### I. BACKGROUND

For nearly ten years, plaintiff D-D The Aquarium Solution Limited ("D-D") and defendant Giesemann Lichttechnik und Aquaristik GmbH ("Giesemann") successfully worked together to distribute fluorescent tubes for use in aquariums, bearing the POWERCHROME mark along with Giesemann's own GIESEMANN mark and D-D's own "bubble logo" mark.[1] In May 2014, Giesemann terminated that arrangement and announced plans to distribute a new line of tubes using co-defendant Vue Technology, LLC d/b/a CoralVue ("CoralVue") as its North American distributor. Giesemann also at that time first disclosed to D-D that its CEO, defendant

---

[1] No written contract spelled out the details of this business arrangement. Instead the parties worked together on the basis of a fax from D-D to Giesemann memorializing the "majority of items" that the parties agreed to orally. Declaration of Axel Finken [Dkt. No. 91] ("Finken Dec.") Exhibit 10 ("Fax Agreement") at 1-2.

Axel Finken ("Finken"), had registered the POWERCHROME mark in his own name with the United States Patent and Trademark Office ("USPTO").

In its six-count complaint, D-D alleges various violations of the Lanham Act and seeks cancellation of Finken's registration of POWERCHROME and money damages. In count 1, D-D claims that defendants engaged in false advertising and false designation of origin based on advertisements posted to Giesemann's website after the arrangement was cancelled. Count 2 alleges that Giesemann infringed D-D's common law trademark, and Count 3 alleges that Finken's registration of the POWERCHROME mark should be cancelled and defendants should pay for any damages resulting from the registration. Count 4 charges both defendants with interfering with D-D and Giesemann's arrangement and with D-D's relationship with its customers, and Counts 5 and 6 charge both defendants with forming a civil conspiracy to harm D-D. In response, defendants filed a six-count counterclaim seeking in Count 1 a declaratory judgment of non-liability, and alleging that D-D engaged in infringement of the POWERCHROME and GIESEMANN marks, (count 2); false designation of origin (count 3); dilution of the POWERCHROME and GIESEMANN marks (count 4); common law trademark infringement (count 5); and common law unfair competition (count 6). D-D's one-count counter-counterclaim seeks cancellation of the GIESEMANN mark.

On March 26, 2015 the Court granted in part the parties' motions for partial summary judgment, dismissing Counts 2, 4, 5, and 6 of D-D's complaint and D-D's counter-counterclaim and dismissing all of defendants' counterclaims except for those dealing with the POWERCHROME mark. March 26, 2015 Order [Dkt. No. 113]. As a result of that ruling all claims against CoralVue were dismissed and that defendant was dismissed from this action. Id. On March 27, 2015 both parties moved for reconsideration of various aspects of the order.

## II. DISCUSSION

Defendants argue that: (1) their counterclaims should not have been dismissed as to the GIESEMANN mark because D-D did not move for summary judgment regarding the GIESEMANN mark; (2) count 3 of the complaint is barred by the statute of limitations; (3) plaintiffs did not provide sufficient evidence of damages resulting from the false advertising alleged in count 1; (4) there was insufficient evidence that the claims made in the defendants' advertising were in fact false; and (5) D-D's admission that it does not own the POWERCHROME mark bars its false designation claim. Memorandum in Support of Motion for Partial Reconsideration of the Court's March 26 Summary Judgment Order [Dkt. No. 116] ("Defendants' Br") at 1-2. D-D has filed an Opposition to Motion for Reconsideration [Dkt. No. 118] ("Plaintiff's Opp'n"), and defendants have filed a Reply in Support of Motion for Partial Reconsideration [Dkt. No. 124] ("Defendants' Reply"). For its part, D-D asks the Court to reinstate CoralVue as a defendant because D-D alleged and there is evidence that CoralVue made actionable false statements as described in Count 1. Memorandum in Support of Plaintiff / Counterclaim-Defendant's Motion for Clarification [Dkt. No. 121] ("Plaintiff's Br.") at 1-2. Defendants oppose D-D's request. Defendants' Opposition to Plaintiff's Motion for Clarification [Dkt. No. 123] ("Defendants' Opp'n").

### A. Standard of Review

Under Fed. R. Civ. P. 59(e), a party may seek to alter or amend a judgment and will prevail if it can establish "either (1) an intervening change in the controlling law, (2) new evidence that was not available at trial, or (3) that there has been a clear error of law or a manifest injustice." Robinson v. Wix Filtration Corp. LLC, 599 F.3d 403, 407 (4th Cir. 2010). Reconsideration "is an extraordinary remedy that should be applied sparingly." Mayfield v. Nat'l

Ass'n for Stock Car Auto Racing, Inc., 674 F.3d 369, 378 (4th Cir. 2012). "[M]ere disagreement does not support a Rule 59(e) motion." United States ex rel. Becker v. Westinghouse Savannah River Co., 305 F.3d 284, 290 (4th Cir. 2002) (quoting Hutchinson v. Staton, 994 F.2d 1076, 1082 (4th Cir. 1993)). "The fact that [a party] does not agree with the court's conclusion is not grounds to alter judgment under Rule 59(e)." Saylor v. Astrue, No. 5:11cv35, 2013 WL 2252913, at *2 (W.D. Va. May 22, 2013).

Neither motion for reconsideration argues that there has been an intervening change in the controlling law or that there is new evidence which was previously unavailable. Accordingly, the motions to reconsider will be granted only if there has been a clear error of law or a manifest injustice. Robinson, 599 F.3d at 407.

### B. Statute of Limitations on Damages Sought in Complaint Count 3

Defendants argue that D-D is barred from seeking any damages for the alleged fraudulent registration of the POWERCHROME mark because D-D filed its suit beyond the statute of limitations period. Defendants' Br. at 4. Specifically, defendants argue that because the Lanham Act does not provide a limitations period for damages resulting from a fraudulent registration of a mark, the statute of limitations must be taken from Virginia's two-year limitations period for fraud. Id. Finken registered the mark in May of 2011 and that registration provides constructive notice that a registrant claims to own the mark. 15 U.S.C. § 1072. Given that registration date, defendants argue that the cause of action accrued in May 2011 and therefore D-D's July 2014 filing was untimely. Id. D-D responds that the Lanham Act sets forth a five-year period in which a party can seek cancellation of a trademark registration, and the Virginia limitations period cannot trump federal law. Plaintiff's Opp'n at 2-3.

Plaintiff's position is wrong. The limitations period for a damages claim resulting from an allegedly fraudulent trademark registration must be taken from state law. East West, LLC v. Rahman, 896 F. Supp. 2d 488, 504-05 (E.D. Va. 2012). See also Island Insteel Sys., Inc. v. Waters, 296 F.3d 200, 206 (3d Cir. 2002) ("Because the Lanham Act does not contain an express statute of limitations, we follow the traditional practice of borrowing the most analogous statute of limitations from state law."). Courts in this district have applied Virginia's two year statute of limitations for fraud to claims for damages under the Lanham Act. See, e.g., East West, 896 F. Supp. 2d at 504 (listing cases), and courts have found that the limitations period to seek damages from a claim stemming from a fraudulent registration begins on the date of registration. See, e.g., Med. Prods. Labs., Inc. v. Premier Dental Prods. Co., No. 12-6051, 2013 WL 395493, at *3 (E.D. Pa. Feb. 1, 2013); Kelly v. Estate of Arnone, No. 08-6046, 2009 WL 2392108, at *7 (D.N.J. Aug. 3, 2009); Lurzer GMBH v. Am. Showcase, Inc., 73 F. Supp. 2d 327, 330 n.4 (S.D.N.Y. 1998). Accordingly, the limitations period for D-D to seek damages from defendants' allegedly fraudulent registration began in May 2011, when Finken registered the POWERCHROME mark. As D-D did not bring suit until July 2014, the claim is time-barred.[2] Accordingly, defendants' Motion for Reconsideration will be granted on this issue and D-D's damages claim for fraudulent registration will be dismissed from this civil action.

---

[2] This court has found similar claims to be time-barred under similar circumstances as well. In Informatics Applications Grp., Inc. v. Shkolnikov, the defendant used plaintiff's information to file a number of patent applications, two of which were published on February 21, 2006 and October 16, 2008. 836 F. Supp. 2d 400, 425 (E.D. Va. 2011). Plaintiff sued for fraud, and defendant argued that those two claims were time barred because plaintiff did not file suit until July 8, 2011. Id. The Court found that publication of the patents provided constructive notice to the plaintiff, thereby starting the statute of limitations time period and thus resulting in the two claims being dismissed as time-barred. Id.

5

### C. Plaintiff's Evidence of Damages for False Advertising

Defendants repeat the argument presented "[d]uring the hearing and in their briefing" that D-D must present evidence of actual consumer confusion to obtain damages for false advertising, and that D-D has not done so. Defendants Br. at 4-6. This argument was previously addressed in the Court's March 26, 2015 Order, where it was found that D-D had produced just enough evidence for this damages issue to go forward. Defendants' disagreement with the Court's ruling does not support a Rule 59(e) motion. Accordingly, that aspect of defendants' motion will be denied.

### D. Plaintiff's Evidence of False Advertising

Defendants next argue that D-D's false advertising claims should have been dismissed because there was no evidence that the statements at issue were actually false. Defendants' Br. at 6. Specifically, defendants challenge the evidence regarding the falsity of Giesemann's statements that its new tubes were "technical improvements over the former D-D Giesemann line," that the new tubes used "new advances" in the relevant technologies, and that the new tubes produced more of a certain type of radiation. Id. D-D has provided sufficient evidence to establish a material dispute as to the truth or falsity of those statements. For example, D-D provided evidence from the manufacturer of both the new and old tubes that both sets of tubes used the same technology. March 16 Declaration of David Saxby [Dkt. No. 102-1] ("Saxby Dec.") Ex. 1 ("The last change in technology was introduced in early 2013"); Id. Ex. 1A. D-D also provided evidence that the new tubes produced less of the desirable radiation than the old

6

tubes. Id. ¶ 25; Id. Ex. 2. D-D's evidence may be attacked at trial.[3] Accordingly, that aspect of defendants' motion to reconsider will be denied.

### E. False Designation Regarding POWERCHROME

Defendants repeat the arguments they made both "at the hearing and in their briefing" that because plaintiff does not own the POWERCHROME mark, its false designation of origin claim fails. Defendants' Br. at 7. For the reasons explained in the March 26 Order, the ownership of the POWERCHROME mark is at the heart of the parties' dispute; therefore, summary judgment is not appropriate. Accordingly, that aspect of defendants' motion to reconsider will be denied.

### F. Dismissal of CoralVue

Plaintiffs argue that CoralVue should not have been dismissed from this action because CoralVue is implicated in the false statements alleged in count 1 of the complaint. Plaintiff's Br. at 1. Defendants respond that CoralVue relied on Finken's representations regarding his ownership of the POWERCHROME mark and the characteristics of the T-5 tubes. Defendants' Opp'n at 1. Tellingly, plaintiff's motion for reconsideration does not cite to any new evidence that CoralVue had any part in creating or publishing the allegedly false statements. The evidence that D-D has adduced does not show that CoralVue bore any responsibility for the allegedly false statements. Accordingly, plaintiff's motion for reconsideration will be denied.

---

[3] Defendants assert that evidence of falsity "does not exist anywhere in the record," and then cites to Mr. Saxby's declaration and a responsive declaration from Mr. Finken. Defendants' Br. at 6 (emphasis removed). That the principals from D-D and Giesemann have submitted signed and sworn declarations regarding the alleged falsity of Giesemann's statements is a classic example of a material factual dispute.

7

### G. Counterclaims Regarding GIESEMANN Mark

Defendants also argue that their counterclaims alleging that D-D infringed the GIESEMANN mark should not have been dismissed because defendants did not receive adequate notice that the issue would be decided on summary judgment. Defendants' Br. at 3. Plaintiff responds that a court may make a sua sponte ruling on summary judgment when the parties have received the opportunity to be heard, and that defendants' counsel had an opportunity to be heard regarding its evidence of infringement of the GIESEMANN mark at oral argument on the motions for partial summary judgment. Plaintiff's Opp'n at 1-2.

Defendants themselves provided evidence that Finken gave D-D permission, unbounded by any time constraints, to continue to offer the co-branded D-D Giesemann tubes until D-D's "existing stock has expired." Finken Dec. Ex. 17. During the hearing on the motions for partial summary judgment, counsel for the defendants was asked to identify any evidence which showed that plaintiff had exceeded Finken's agreement to allow plaintiff to sell all its existing stock of tubes bearing the POWERCHROME and GIESEMANN marks. Counsel was unable to identify any evidence of sales, relying only on an undated advertisement stating that "D-D Giesemann tubes are here to stay." Saxby Dec. Ex. 4. That statement is entirely consistent with D-D's distribution of its existing stock.[4] In its motion for reconsideration, defendants have not identified any evidence in the record establishing that plaintiff is making any unauthorized use of the GIESEMANN mark and in an off the record telephone conference on March 30, 2015, counsel for the defendants remained unable to identify any such evidence, other than again referring to that advertisement.

---

[4] Defendants' current position is inconsistent with their successful argument that their use of D-D's company logo on the Giesemann website for one week during the summer of 2014 after their business arrangement had ended was de minimis and therefore not actionable. Memorandum in Support of Defendants' Motion for Partial Summary Judgment [Dkt. No. 90] at 24-25.

In deference to defendants' desire to be heard on this issue, the Court has advised defense counsel that they may request one last pretrial hearing on the issue of whether D-D is making unauthorized use of the GIESEMANN mark. At that hearing, defendants must present evidence of D-D's unauthorized use of the GIESEMANN mark. Unless the Court receives such evidence, the decision to strike the claim regarding the GIESEMANN mark from defendants' counterclaim will remain unchanged.

### III. CONCLUSION

For the reasons stated above, defendants' motion for reconsideration will be granted in part and plaintiff's motion for reconsideration will be denied by an appropriate Order to be issued with this Memorandum Opinion.

Entered this 1st day of April, 2015.

Alexandria, Virginia

/s/
Leonie M. Brinkema
United States District Judge